1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONTE PICOU,                              No.  2:24-cv-00526-DC-JDP

12                   Plaintiff,

13        v.                                   ORDER GRANTING DEFENDANT'S
                                               MOTION TO DISMISS AND DENYING
14   TRACY LOGISTICS LLC,                      DEFENDANT'S MOTION TO STRIKE

15                   Defendant.                (Doc. No. 40)

16

17        This matter is before the court on Defendant's motion to dismiss Plaintiff's first amended

18   complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike certain

19   allegations under Federal Rule of Civil Procedure 12(f). (Doc. No. 40.) The pending motion was

20   taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 41.)

21   For the reasons discussed below, the court will grant Defendant's motion to dismiss and deny

22   Defendant's motion to strike.

23                                    **BACKGROUND**

24        In this class action lawsuit, Plaintiff Donte Picou is suing his former employer, Defendant

25   Tracy Logistics LLC, for violating California wage-and-hour and unfair competition laws. On

26   November 13, 2023, Plaintiff filed a putative class action complaint against Defendant in San

27   Joaquin County Superior Court. (Doc. No. 1 at 2, 26.) Plaintiff filed the operative first amended

28   class action complaint ("FAC") in San Joaquin County Superior Court on January 17, 2024. (*Id.*

1

1    at 3, 53.) Defendant filed its notice of removal of the action to this court on February 20, 2024.

2    (*Id*. at 2.)

3        In the FAC, Plaintiff alleges Defendant conducts business throughout California and

4    operates offices and facilities in San Joaquin, California. (Doc. No. 1 at 55.) Plaintiff also alleges

5    he was employed by Defendant as a non-exempt hourly employee at its office and facilities. (*Id.*)

6    In its notice of removal, Defendant alleges it entered into a collective bargaining agreement with

7    General Teamsters Local #439 that applied to work performed by covered employees from June

8    1, 2021, through May 31, 2028 ("2021 CBA"). (Doc. Nos. 1 at 20; 1-2 at 4.) Plaintiff's

9    allegations in the FAC do not reference the 2021 CBA, nor are his claims expressly predicated on

10   terms of the 2021 CBA.[1] Plaintiff brings the following thirteen causes of action in the FAC: (1)

11   failure to pay minimum wages; (2) failure to pay wages and overtime pursuant to Labor Code

12   section 510; (3) recovery of reporting time pay; (4) meal-period liability pursuant to Labor Code

13   section 226.7; (5) rest-break liability pursuant to Labor Code section 226.7; (6) failure to pay

14   vacation wages; (7) failure to provide paid sick time and failure to compute the amount due for

15   paid sick time in violation of Labor Code sections 245 and 246; (8) failure to provide accurate

16   _____

17   [1] Along with its motion to dismiss, Defendant concurrently requests the court take judicial notice
     of the 2021 CBA, as well as a copy of an order granting a motion to dismiss in *Murdock v.*

18   *McLane/Suneast, Inc.*, No. 21-cv-00657-JWH-SP (C.D. Cal.). (Doc. No. 40 at 13–14.) Though a
     court generally may not consider material outside the complaint on a motion to dismiss, the court

19   may look beyond the pleadings at "matters of which a court may take judicial notice." *Tellabs,*
     *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under Federal Rule of Evidence

20   201, a court may take judicial notice of an adjudicative fact that is "not subject to reasonable
     dispute because it: (1) is generally known within the trial court's territorial jurisdiction, or (2) can

21   be accurately and readily determined from sources whose accuracy cannot reasonably be
     questioned." Fed. R. Evid. 201(b). "It is often necessary to consider the contents of a [collective

22   bargaining agreement] to decide a motion to dismiss based on an argument of complete
     preemption, which is considered an 'independent corollary to the well-pleaded complaint rule.'"

23   *Patrick v. Nat'l Football League*, No. 23-cv-01069-DMG-SHK, 2023 WL 6162672, at *3 (C.D.

24   Cal. Sept. 21, 2023) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)); *see also*
     *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1186 (E.D. Cal. 2016) (taking judicial

25   notice of collective bargaining agreements where necessary to resolve issues of preemption). The
     court therefore grants Defendant's request and takes judicial notice of the 2021 CBA. The court

26   need not take judicial notice of the decision in *Murdock*, however, because "[j]udicial notice is

27   not required for the court to consider the cited opinions as matters of law and potentially
     persuasive precedents." *See Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x

28   666, *1 n.1 (9th Cir. 2011).

itemized statements in violation of Labor Code section 226(a); (9) failure to keep required payroll records pursuant to Labor Code sections 1174 and 1174.5; (10) failure to pay all wages due and certain upon separation of employment pursuant to Labor Code section 203; (11) failure to reimburse for necessary business expenses pursuant to Labor Code section 2802; (12) violation of Business and Professions Code section 17200 *et seq.* ("UCL"); and (13) penalties pursuant to California's Private Attorneys General Act, ("PAGA") pursuant to Labor Code section 2699, *et seq.* (*Id.* at 53, 59–78.) Plaintiff seeks to represent a class of "all individuals employed by Defendant[], at any time within four (4) years of the filing of this lawsuit, as non-exempt, hourly employees within the State of California." (*Id.* at 62.) Further, Plaintiff seeks to represent twelve subclasses, corresponding with each of Plaintiff's first twelve claims. (*Id.* at 62–63.)

On July 11, 2024, Defendant filed the pending motion to dismiss and/or strike Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(f). (Doc. No. 40.) Defendant asserts Plaintiff's claims for overtime, paid sick leave, meal and rest break and vacation pay should be dismissed because they are predicated on rights created by the 2021 CBA and/or require interpretation or analysis of the 2021 CBA and are therefore preempted by § 301 of the Labor Management Relations Act of 1945, 29 U.S.C. § 185, *et seq.* ("§ 301" or "LMRA"). (*Id.* at 16–21.) Defendant also argues dismissal of Plaintiff's claims is warranted because Plaintiff fails to allege sufficient facts to support cognizable legal claims for relief. (*Id.* at 21–34.) As for its motion to strike, Defendant asserts Plaintiff's proposed class definitions should be dismissed and/or stricken because they are improper "fail-safe" class definitions. (*Id.* at 34.) On July 25, 2024, Plaintiff filed an opposition to Defendant's motion, and Defendant filed a reply on August 5, 2024. (Doc. Nos. 42–43.)

**DISCUSSION**

The court will begin by addressing whether Plaintiff's claims are exempted under California Labor Code sections 245.5(a)(1) and 514[2] and consequently preempted pursuant to § 301 of the LMRA. The court will then assess whether Plaintiff has sufficiently stated cognizable

---

[2] All subsequent references to code sections refer to the California Labor Code unless otherwise stated.

claims for relief. Lastly, the court will address Defendant's motion to strike Plaintiff's proposed

class definitions contained in the FAC.

**A.    Exemptions Pursuant to California's Labor Code**

Defendant contends Plaintiff's overtime and paid sick leave claims fail because Sections

245.5(a)(1) and 514 exempt employees who are covered by a qualifying collective bargaining

agreement from California's overtime and paid sick leave requirements. (Doc. No. 40 at 16.)

1.    Overtime

Section 510 sets forth the default rule for overtime. However, Section 514 provides that:

> Section[s] 510 and 511 do not apply to an employee covered by a
> valid collective bargaining agreement if the agreement expressly
> provides for the wages, hours of work, and working conditions of the
> employees. And if the agreement provides premium wage rates for
> all overtime hours worked and a regular hourly rate of pay for those
> employees of not less than 30 percent more than the state minimum
> wage.

Cal. Lab. Code § 514.

Here, the 2021 CBA expressly provides for wages, hours of work, working conditions,

and provides premium wage rates for all overtime hours worked. (Doc. No. 1-2 at 15–17, 20–22,

27–28, 30, 33–34.) Defendant contends Plaintiff's regular hourly rate of pay was at all times over

30 percent above the state minimum wage rate, so the exemption applies to his overtime claim.

(Doc. No. 40 at 16–17.)[3] Specifically, Defendant asserts Plaintiff, as a warehouse employee, was

entitled to be paid a regular rate of not less than $21.38 per hour throughout his employment. (*Id.*

at 17.)

While Plaintiff and warehouse employees' regular hourly rate of pay was at all times over

30 percent above the state minimum wage rate, the 2021 CBA provides wage rates that fall below

---

[3] The parties do not dispute, and the court takes judicial notice that in 2021, California's
minimum wage was $14.00 and was raised to $15.50 on January 1, 2023. (Doc. No. 40 at 17);
State of California, Department of Industrial Relations, Minimum Wage Frequently Asked
Questions, (Dec. 2024)
https://www.dir.ca.gov/dlse/faq_minimumwage.htm/ (last visited April 16, 2025); *see Clee v.
Benson Indus.*, No. 2:24-cv-01529-DAD-AC, 2024 WL 4462337, at *2 (E.D. Cal. Sep. 30, 2024)
(finding the court may take judicial notice of the minimum wage rates in California because they
are a matter of public record).  Therefore, thirty percent over the state minimum wage rate in
2021 was $18.20.

the 30 percent threshold during the applicable time period for other categories of covered employees. (Doc. No. 1-2 at 27.) On January 1, 2023, the minimum wage in California was raised to $15.50. (Doc. No. 40 at 17.) Thus, for approximately five months before the 2021 CBA's scheduled wage increase in June 2023, newly hired sanitation and auditor employees' regular hourly rates, $19.74 and $19.59 respectively, did not meet the requirement of 30 percent above the California minimum wage rate for 2023, which was $20.15. (Doc. No. 1-2 at 27.)

District courts within the Ninth Circuit are divided on the question of whether a collective bargaining agreement fails to meet Section 514's requirements if the agreement does not meet the requirements with respect to all covered employees. Some courts have determined it is not necessary to show a collective bargaining agreement provided 130 percent of the minimum wage to every employee, so long as the plaintiff's wage rate satisfied that requirement. *Sachs v. Pankow Operating Inc.*, No. 2:21-cv-08998-AB-ADS, 2022 WL 489696, at *6 (C.D. Cal. Feb. 16, 2022); *Huerta v. Doubletree Emp. LLC*, No. 8:23-cv-02433-CJC-ADS, 2024 WL 890548, at *3 (C.D. Cal. Mar. 1, 2024); *Rodriguez v. USF Reddaway, Inc.*, No. 2:22-cv-00210-TLN-DB, 2022 WL 18012518, at *4 (E.D. Cal. Dec. 30, 2022).

However, a substantial number of district courts have concluded that a collective bargaining agreement must satisfy Section 514's requirements with respect to all covered employees. *Huffman v. Pac. Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL 2563133, at *5–6 (N.D. Cal. Jun. 21, 2019); *Rooney v. Save Mart Supermarkets,* No. 2:20-cv-00671-JAM-FEB, 2020 WL 3819481, at *2–3 (E.D. Cal. Jul. 8, 2020); *see Camarena-Regalado v. S. Cal. Permanente Med. Grp.*, No. 2:22-cv-06010 JAK-JPR, 2023 WL 6216708, at *5, n. 1 (C.D. Cal. Sep. 25, 2023) (citing cases); *see also Allmaras v. Univ. Mech. & Eng'g Contr., Inc.*, No. 24-cv-01581-GPC-SBC, 2024 U.S. Dist. LEXIS 212432, at *11–13 (S.D. Cal. Nov. 20, 2024) (discounting the conclusions of *Sachs* and *Huerta* because the analysis in those cases was based on public policy considerations rather than the text of the statute).

Having considered these decisions, the court agrees with the substantial number of district courts in the Ninth Circuit that have interpreted Section 514 to mean that a collective bargaining agreement must satisfy Section 514's requirements as to all employees covered by the agreement.

1    Thus, the court finds the Section 514 exemption does not apply to the 2021 CBA because the

2    2021 CBA provides for wage rates for some covered employees that are less than 30 percent

3    more than the state minimum wage during the relevant time period.

4            2.    Paid Sick Leave

5            Section 246.5(a) requires an employer to provide paid sick days for the "[d]iagnosis, care,

6    or treatment of an existing health condition of, or preventative care for, an employee

7    or an employee's family member[.]" However, Section 245.5(a)(1) functions as an "opt-out

8    mechanism" that allows employers and employees to opt out of the requirements of Section

9    246.5(a) by agreeing to certain heightened employment standards in their collective bargaining

10   agreement. *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011 (9th Cir. 2018). Section

11   245.5(a)(1) states that Section 246.5(a)'s sick day requirements do not apply to:

12           "[a]n employee covered by a valid collective bargaining agreement
             if the agreement expressly provides for the wages, hours of work,
13           and working conditions of employees, and expressly provides for
             paid sick days or a paid leave or paid time off policy that permits the
14           use of sick days for those employees, final and binding arbitration of
             disputes concerning the application of its paid sick days provisions,
15           premium wage rates for all overtime hours worked, and regular
             hourly rate of pay of not less than 30 percent more than the state
16           minimum wage rate."

17   Cal. Lab. Code § 245.5(a)(1). Here, the 2021 CBA provides for wages, hours of work, working

18   conditions, paid sick leave, arbitration of paid sick leave disputes, and payment of overtime

19   wages. (Doc. No. 1-2 at 11–17, 20–22, 27–28, 30, 33–34.)  Like Plaintiff's overtime claim, the

20   Section 245.5(a)(1) exemption also "requires a collective bargaining agreement that provides for

21   the enhanced regular rate of pay for all covered employees." *Div. of Labor Stds. Enf't v. Save*

22   *Mart Supermarkets*, No. 21-cv-07402-ODW-E, 2022 WL 837206, at *6 (C.D. Cal. Mar. 21,

23   2022). As discussed above, the 2021 CBA does not provide a regular hourly rate of pay of not

24   less than 30 percent more than the state minimum wage rate for all covered employees during the

25   applicable time period. Consequently, the court concludes that the Section 245.5(a)(1) exemption

26   also does not apply to the 2021 CBA.

27   /////

28   /////

6

1    **B.** **LMRA Preemption**

2        1.    Legal Standard

3        Congress enacted the LMRA to "promote the full flow of commerce" by providing

4    "orderly and peaceful procedures for preventing [] interferences by [employees or employers]

5    with the legitimate rights of the other." *Columbia Export Terminal, LLC v. Int'l Longshore and*

6    *Warehouse Union*, 23 F.4th 836, 840–41 (9th Cir. 2022) (quoting 29 U.S.C. §141(b)). Pursuant to

7    § 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor

8    organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a);

9    *see McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (§ 301 of the

10   LMRA "vests federal courts with jurisdiction" to hear suits between an employer and labor

11   organization "without respect to the amount in controversy or without regard to the citizenship of

12   the parties.") (citing 29 U.S.C. § 185(a)).

13       On its face, § 301 reads as a jurisdictional statute, and "contains no express language of

14   pre-emption." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2018). However, the

15   Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform

16   body of federal common law to adjudicate disputes that arise out of labor contracts. *Id.* (citing

17   *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369

18   U.S. 95, 103–04 (1962)). The Ninth Circuit recognized that although federal preemption is

19   generally a federal affirmative defense that does not allow removal to federal court, § 301 "has

20   such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint

21   into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis*, 913

22   F.3d at 1152 (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

23       The preemptive power of § 301 of the LMRA is not limitless. Section 301 may not be

24   read so broadly as to "pre-empt nonnegotiable rights conferred on individual employees as a

25   matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123

26   (1994)). If a "claim is plainly based on state law, § 301 preemption is not mandated simply

27   because the defendant refers to [a collective bargaining agreement] in mounting a defense."

28   *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). Likewise, if a contract

7

1  cannot waive or alter a state law, and if the rights of the state law can be enforced without

2  consideration of the contract's terms, § 301 preemption does not apply. *Miller v. AT & T Network*

3  *Sys.*, 850 F.2d 543, 546 (9th Cir. 1988); *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d

4  1024, 1032 (9th Cir. 2016) ("Critically, 'not every dispute concerning employment, or

5  tangentially involving a provision of a collective-bargaining agreement, is pre-empted by

6  § 301.'").

7      To determine if § 301 preemption applies, courts look to the Ninth Circuit's two-step

8  analysis articulated in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). *Curtis*, 913

9  F.3d at 1152. First, if the asserted cause of action involves a "right [that] exists solely as a result

10  of the [collective bargaining agreement]," then the claim is preempted, and the analysis ends

11  without proceeding to step two. *Id.* (quoting *Kobold*, 832 F.3d at 1032); *Burnside*, 491 F.3d at

12  1059).

13      If not, the court proceeds to the second step and asks whether a plaintiff's state law right

14  is "substantially dependent" on analysis of the collective bargaining agreement. *Burnside*, 491

15  F.3d at 1059. This second step "turns on whether the claim cannot be resolved by simply

16  'look[ing] to' versus 'interpreting' the [collective bargaining agreement]." *Curtis*, 913 F.3d at

17  1153 (citing *Kobold*, 832 F.3d at 1033). Interpretation is construed narrowly in this context, it

18  means something more than consider, refer to, or apply. *Id.*; *Balcorta v. Twentieth Century-Fox*

19  *Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). Accordingly, at the second step of the *Burnside*

20  analysis, claims are only preempted to the extent there is an active dispute over "the meaning of

21  contract terms." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (citing

22  *Livadas*, 512 U.S. at 124).

23      2.    Rights Arising Solely Under the 2021 CBA

24      Defendant asserts Plaintiff's overtime and paid sick leave claims are preempted under step

25  one of *Burnside* because they involve rights that exist solely as a result of the 2021 CBA. (Doc.

26  No. 40 at 18–19.) When the requirements of Sections 245.5(a)(1) and 514 are satisfied by a

27  collective bargaining agreement, the right to overtime compensation and paid sick leave "exists

28  solely as a result of the [collective bargaining agreement]" and is preempted pursuant to § 301.

8

1    *Curtis*, 913 F.3d at 1155; *Dent v. Nat'l Football League*, 968 F.3d 1126, 1135 (9th Cir. 2020); *see*

2    *Div. of Labor Stds. Enf't v. Save Mart Supermarkets*, No. 21-cv-07402-ODW-E, 2022 WL

3    837206, at *6 (C.D. Cal. Mar. 21, 2022). As discussed above, the 2021 CBA does not provide a

4    regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate for

5    all covered employees during the relevant time period. Therefore, neither exemption applies and

6    Plaintiff's overtime and paid sick leave claims are not preempted under step one of the *Burnside*

7    analysis.

8            3.        Rights Substantially Dependent on Analysis of the 2021 CBA

9            Defendant also argues Plaintiff's claims for overtime, paid sick leave, meal and rest

10   breaks, and vacation wages are preempted under step two of *Burnside* because they are

11   substantially dependent on interpretation of the 2021 CBA.

12           First, Defendant contends a court's determination of whether a claim is barred by a

13   statutory exemption "necessarily requires an interpretation of the provisions of the 2021 CBA."

14   (Doc. No. 40 at 19.) In essence, Defendant argues a court's analysis of a claim under step one of

15   *Burnside*, inevitably requires a court to find preemption under step two. The court finds

16   Defendant's argument unavailing. A court's determination that a statutory exemption does not

17   apply to a collective bargaining agreement does not compel the court to inevitably engage in

18   interpretation of the terms therein. Rather, when the terms and provisions of a collective

19   bargaining agreement are "straightforward and clear," interpretation of the agreement is not

20   required. *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F. Supp. 3d 932, 956 (C.D. Cal.

21   2014).

22           The 2021 CBA's terms are clear as to hours of work, working conditions, paid sick leave,

23   arbitration of paid sick leave disputes, and payment of overtime wage rates. (Doc. No. 1-2 at 11–

24   17, 20–22, 27–28, 30, 33–34.) Determining whether the statutory exemptions provided by

25   Sections 245.5(a)(1) and 514 apply to the 2021 CBA does not require the court to interpret those

26   terms. *See Livadas*, 512 U.S. at 125 (holding that "the mere need to 'look to' the collective-

27   bargaining agreement . . . is no reason to hold the state-law claim defeated by § 301").

28           Second, Defendant asserts Plaintiff's overtime, paid sick leave, vacation wages, and meal

1    and rest break claims are preempted because each of those claims are predicated on the theory

2    that Defendant failed to properly calculate the regular rate of pay—a theory that turns on

3    interpretation of various 2021 CBA provisions governing how premium rates are calculated.

4    (Doc. No. 40 at 19–21.) To support its position that interpretation of the 2021 CBA would be

5    required, Defendant analogizes this case to *McKinley v. Southwest Airlines Co.*, No. 15-cv-02939-

6    AB JPR, 2015 WL 2431644 (C.D. Cal. May 19, 2015), aff'd, 680 F. App'x 522 (9th Cir. 2017).

7    (*Id*. at 20–21.) In *McKinley*, the court found the plaintiff's claims preempted because the parties

8    disputed the method for calculating the regular rate of pay. 2015 WL 2431644, at *5–8. The court

9    finds Defendant's reliance on the decision in *McKinley* unpersuasive because the parties in this

10    case do not dispute the regular rate of pay. Defendant has not identified any active dispute

11    between the parties for calculating the regular rate or straight-time rate of pay. *See Firestone v. S.*

12    *Cal. Gas Co.*, 219 F.3d 1063, 1056–66 (9th Cir. 2000) (finding preemption because the parties

13    disputed the method for calculating the regular rate).

14        The court in *McKinley* also found interpretation of the collective bargaining agreement

15    was necessary because the plaintiff's claims involved "many different provisions" and "[i]n order

16    to assess [the] Plaintiff's claim, the Court would have to examine the interaction of those

17    provisions." 2015 WL 2431644, at *8. Analogizing to *McKinley*, Defendant suggests that here too

18    the 2021 CBA's provisions could affect an employee's straight-time rate and the court will be

19    required to search the 2021 CBA to determine an employee's wages. (Doc. No. 40 at 20.) For

20    example, Defendant points to provisions concerning freezer premiums that could affect the

21    straight-time rate for an employee who works in the warehouse freezer, coupled with "other

22    forms of incentive compensation expressly contemplated by the [2021] CBA." (*Id*. at 20–21)

23    (citing Doc. No. 1-2 at 28). But calculating an employees' straight-time rate because they worked

24    in a freezer coupled with "other forms of incentive compensation" doesn't require interpretation

25    of the 2021 CBA. Rather, this would require the court to engage in simple math to determine the

26    straight-time rate.

27        In addition, Defendant fails to identify any terms or issues that would complicate the

28    court's determination of the applicable regular or straight-time rate. *C.f. Raphael*, 2015 WL

3970293, at *6 (the defendant "describe[d] the complexity involved in calculating the proper

wage and premium rates under only a single [collective bargaining agreement], highlighting

essential terms that . . . need[ed] to be interpreted"); *see also Wilson-Davis v. SSP Am., Inc.*, 434

F. Supp. 3d 806, 813 (C.D. Cal. 2020) ("It is not enough for Defendants to provide a laundry list

of provisions that they allege the court must interpret to resolve Plaintiff's claims; Defendants

must explain why interpretation, as opposed to mere reference to the [collective bargaining

agreement] is necessary.").

Lastly, Defendant argues Plaintiff's vacation wage claim is also preempted because the

2021 CBA governs the payment of vacation wages. (Doc. No. 40 at 21.) Section 227.3 states

"[u]nless otherwise provided by a collective-bargaining agreement, whenever a contract of

employment or employer policy provides for paid vacations, and an employee is terminated

without having taken off his vested vacation time, all vested vacation shall be paid to him as

wages at his final rate in accordance with such contract of employment . . ." In its pending

motion, Defendant cites a portion of the 2021 CBA that states:

> An employee who fails to work the requisite minimum number of
> hours during the twelve (12) months preceding the most recent
> anniversary date or who is not in the employ of the Employer or an
> anniversary date shall not qualify for a vacation or for pay in lieu
> thereof; provided, however, that for those employees who have been
> in the service of their Employer for more than one (1) year and who
> fail to qualify for a full vacation, vacation benefits shall be prorated
> in accordance with the following schedule: (there is to be no
> proration of vacation benefits for hours worked during the first year
> of employment).

(Doc. No. 40 at 21) (citing Doc. No. 1-2 at 18–19).

Defendant argues the court will be required to interpret the 2021 CBA to determine

"[w]hether Plaintiff and/or putative class members [] were entitled to accrue paid vacation in the

first instance and/or to be paid 'in lieu thereof' for any allegedly accrued but unused vacation at

the time of their termination . . ." (Doc. No. 40 at 21.) However, Defendant fails to sufficiently

identify any ambiguity or disputed terms that will require the court to analyze the 2021 CBA. *C.f.

Jaco v. Winco Holdings Inc*., No. 18-cv-00301-DAD-EPG, 2019 WL 1438069, at *6 (E.D. Cal.

Mar. 31, 2019) (finding that a determination of the plaintiff's vacation wage claim would require

1    the court to interpret the meaning and significance of the term "gross misconduct"). As the

2    movant, it was Defendant's burden to point to a provision that is at issue that would require

3    interpretation from the court, and Defendant has not done so.

4         For these reasons, the court finds the 2021 CBA is not preempted under the LMRA.

5    **C.      Motion to Dismiss – Rule 12(b)(6)**

6         1.    <u>Legal Standard</u>

7         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

8    dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

9    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

10   cognizable legal theory or the absence of sufficient facts to support a cognizable legal

11   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v.*

12   *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

13        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

14   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

15   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

16   *also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim

17   showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if

18   it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is

19   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For

20   purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed

21   in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

22   337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted

23   unless the district court 'determines that the pleading could not possibly be cured by the

24   allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009)

25   (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

26        2.    <u>Failure to Pay Overtime and Minimum Wages (Claims 1 and 2)</u>

27        California law requires an employer to pay employees the minimum wage for all hours

28   worked. Cal. Lab. Code § 1197. Additionally, employers must pay overtime for work exceeding

1  eight hours in one workday and forty hours in any workweek. *Id*. § 510. An employee receiving

2  less than the legal minimum wage or legal overtime compensation is entitled to recover in a civil

3  action. *Id*. § 1194.

4      In his FAC, Plaintiff alleges Defendant had a "uniform pattern of unlawful wage and hour

5  practices," including requiring employees to have their bags checked, wait in line, and respond to

6  phone calls from Defendant's supervisors while off-the-clock. (Doc. No. 1 at 56–57, 65–66.) As a

7  result of these practices, Plaintiff alleges he and the putative class were not properly paid for all

8  wages earned and owed to them, and they were required to work in excess of eight, ten, and

9  twelve hours a day, and/or forty hours a week. (*Id*. at 57, 65–66.) Plaintiff further alleges

10  Defendant failed to compensate him and the putative class for all hours worked while operating

11  under alternative workweek agreements. (*Id*. at 65–66.) Plaintiff next alleges employees were

12  contacted to be on-call or standby and needed to be located not too far from the job site and that

13  he and the class were not paid for the time they spent on-call or standby. (*Id*.) According to

14  Plaintiff, Defendant did not pay employees the correct overtime rate and "failed to incorporate all

15  remunerations, including shift differentials, nondiscretionary commissions, incentive pay, and/or

16  nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of

17  calculating the overtime wage rate." (*Id*. at 67–68.)

18      In its motion to dismiss, Defendant argues Plaintiff has not pleaded sufficient facts to

19  support his off-the-clock theory of liability for his minimum wage and overtime claims. (Doc. No.

20  40 at 21.) Defendant asserts Plaintiff failed to allege facts to show that there was at least one week

21  in which he was eligible for but was denied minimum or overtime wages. (*Id*. at 22.) In his

22  opposition, Plaintiff argues he is not required to identify an exact work shift in which he and/or

23  the proposed class incurred unpaid hours in order to sufficiently state a claim for non-payment of

24  wages. (Doc. No. 42 at 16) (citing *Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th

25  Cir. 2015)).

26      The Ninth Circuit in *Landers* gave guidance to district courts on how to address claims

27

28

1  concerning uncompensated work such as those at issue in this case. 771 F.3d at 641–46.[4] In

2  *Landers*, the Ninth Circuit clarified that plaintiffs are not required to "approximate the number of

3  hours worked without compensation" or allege how much is owed "with mathematical precision."

4  *Id*. at 646 (citing *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 89 (2d Cir. 2013)). Instead, a plaintiff

5  must "at a minimum . . . allege that [he] worked more than forty hours in a given workweek

6  without being compensated for the hours worked in excess of forty during that week." *Id*. at 645.

7       District courts are split on the practical implication of the Ninth Circuit's opinion in

8  *Landers*. *See Barajas v. Blue Diamond Growers Inc.*, No. 20-cv-00679-KJM-JDP, 2024 WL

9  4443073, at *3 (E.D. Cal. Oct. 8, 2024); *Turner v. LTF Club Mgmt. Co., LLC*, 20-cv-00046-KJM-

10  JDP, 2022 WL 1018498, at *2–3 (E.D. Cal. Apr. 5, 2022) (collecting cases); *Sanchez v. Ritz*

11  *Carlton*, No. 15-cv-03484-PSG-PJW, 2015 WL 5009659, at *2 (C.D. Cal. Aug. 17, 2015) ("In

12  *Landers*' wake, courts have offered varying and possibly inconsistent standards for stating wage-

13  and-hour claims under California law."). Some courts applying *Landers* have required plaintiffs

14  to plead facts identifying a specific calendar week in which they were denied overtime pay or

15  minimum wages. *See Perez v. Wells Fargo & Co.* 75 F. Supp. 3d 1184, 1192–93 (N.D. Cal.

16  2014). Other courts have declined to read *Landers* as requiring such specificity. *See Turner*, 2022

17  WL 1018498, at *3–6; *Sagastume v. Psychemedics Corp.*, No. 20-cv-06624-DSF-GJS, 2020 WL

18  8175597, at *3 (C.D. Cal. Nov. 30, 2020); *see also Perez v. Island Hosp. Mgmt. III, LLC*, No. 18-

19  cv-04903-DMG-JPR, 2019 WL 3064113, at *4 (C.D. Cal. Feb. 8, 2019). Instead, those courts

20  required plaintiffs to provide some material details to give rise to a plausible inference that the

21  plaintiff was not paid minimum wage or overtime during at least one workweek. *See Reed v.*

22  *AutoNation, Inc.*, No. 16-cv-08916-BRO-AGR, 2017 WL 6940519, at *4-5 (C.D. Cal. Apr. 20,

23  2017) (concluding that *Landers* does not require allegations of a particular example of a

24  minimum wage violation but does require alleging a specific instance of an overtime claim). A

25  _____

26  [4] Although *Landers* addressed claims brought under the Fair Labor Standards Act, federal courts
have held that its reasoning applies to California Labor Code claims as well. *See Perez v. DNC*

27  *Parks & Resorts at Asilomar, Inc.*, No. 19-cv-00484-DAD-SAB, 2022 WL 411422, at *6 (E.D.
Cal. Feb. 10, 2022) ("This [Fair Labor Standards Act] pleading requirement applies to minimum

28  and overtime wage claims under state law as well.").

1   plaintiff may accomplish this "by estimating the length of her average workweek during the

2   applicable period and the average rate at which she was paid, the amount of overtime wages she

3   believes she is owed, or any other facts that will permit the court to find plausibility." *Landers*,

4   771 F.3d at 645 (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012)).

5          Here, Plaintiff fails to state a minimum and/or overtime wage claim under either reading

6   of *Landers.* Plaintiff's FAC fails to identify any specific workweek in which Defendant's alleged

7   practices required him to work without appropriate compensation. Plaintiff has also not alleged

8   any facts regarding his typical work schedule beyond a general allegation that employees

9   regularly worked over eight hours on a given day without receiving compensation. *See Sherman*

10  *v. Schneider Nat'l Carriers, Inc.*, No. 18-cv-08609-AB-JC, 2019 WL 3220585, at *3 (C.D. Cal.

11  Mar. 6, 2019) (dismissing claims because, although plaintiff alleged he worked in excess of 40

12  hours, plaintiff failed to plead "how many days per week he typically worked" and therefore did

13  "not establish that he worked 40 hours in any week as necessary to trigger entitlement to

14  overtime."). While Plaintiff identifies uncompensated tasks he and the alleged class engaged in

15  while off-the-clock, Plaintiff does not provide an estimate of the amount of time he spent on said

16  tasks or how often those tasks were undertaken. For these reasons, Plaintiffs allegations fall short

17  of stating cognizable claims for minimum and overtime wages. *See Gordon v. Abbott Vascular*

18  *Inc.*, No. 22-cv-01438-MCS-SHK, 2023 WL 2627739, at *3 (C.D. Cal. Jan. 30, 2023) (finding

19  minimum wage claim deficient because plaintiff failed to allege the amount she was paid and the

20  amount she expected to receive; but plaintiff sufficiently pleaded an overtime wage claim by

21  alleging that, in a particular workweek, defendant failed to pay overtime wages for six minutes

22  spent each workday donning protective gear); *Edwards v. Costco Wholesale Corp.*, No. 21-cv-

23  00716-MWF-KK, 2021 WL 3130043, at *5 (C.D. Cal. Jul. 23, 2021) (dismissing minimum wage

24  claim because plaintiff provided "no context regarding how many minutes or hours Plaintiff

25  allegedly worked off the clock, or how often it allegedly happened"). Moreover, Plaintiff's

26  allegations regarding time he spent on-call or standby do not save his overtime claim because he

27  does not identify a single instance when he was on-call or standby, nor does Plaintiff provide any

28  estimate of the number of times when he was on-call or standby per week and for how long each

1    occurrence generally lasted.

2         Additionally, to support his overtime claim, Plaintiff alleges Defendant failed to timely

3    pay compensation in violation of Section 204. (Doc. No. 1 at 68.) Plaintiff does not allege,

4    however, sufficient detail to support this claim. Notably, Plaintiff does not allege he was not paid

5    every two weeks as required by Section 204, and as discussed above, Plaintiff does not identify

6    any instances when he was not paid for regular and/or overtime work. "Moreover, a violation of

7    Section 204 'does not grant [] employees a private right of action against employers who violate

8    section 204.'" *Attebery v. US Foods, Inc.*, No. 22-cv-01352-JLT-BAM, 2024 WL 1053806, at *5

9    (E.D. Cal. Mar. 11, 2024) (quoting *Young v. ABM Sec. Servs.*, 905 F.2d 1541, at *3 (9th

10   Cir.1990)). Thus, to the extent Plaintiff seeks to assert a claim under Section 204 as a private right

11   of action, that claim is not cognizable. However, Plaintiff may still allege a violation of Section

12   204 through PAGA.

13        Plaintiff requests he be granted leave to amend his overtime and minimum wages claims

14   to cure any insufficient allegations. (Doc. No. 42 at 16.) Rule 15 provides that "leave [to amend]

15   shall be freely given when justice so requires." However, district courts are only required to grant

16   leave to amend if a complaint can be saved. *Lopez v.*, 203 F.3d at 1129. Here, the court cannot

17   conclude Plaintiff's overtime and minimum wages claims cannot possibly be cured by the

18   allegation of other facts. *Watson v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

19        Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's claims for

20   failure to pay overtime and minimum wages (Claims 1 and 2) with leave to amend.

21        3.    Reporting Time Pay (Claim 3)

22        Plaintiff alleges Defendant violated Industrial Welfare Commission orders involving

23   reporting time pay, which provide (Doc. No. 1 at 69), in pertinent part:

24             Each workday an employee is required to report for work and does
               report but is not put to work or is furnished less than half said
25             employee's usual or scheduled day's work, but in no event for less
               than two (2) hours nor more than four (4) hours, at the employee's
26             regular rate of pay, which shall not be less than the minimum wage.

27   (Doc. No. 1 at 69); Cal. Code Regs., tit. 8, § 11010 subd. 5 (2001). To state a reporting time pay

28   claim, a plaintiff must allege that: (1) they were required to report for work by their employer, (2)

                                                   16

1    plaintiff did report to work, and (3) plaintiff was not put to work. *Dimercurio v. Equilon Enters.*

2    *LLC*, No. 19-cv-04029-JSC, 2020 WL 227262, at *3 (N.D. Cal. Jan. 15, 2020). Here, Plaintiff

3    alleges he is "informed and believes" that all or substantially all of Defendant's hourly paid

4    employees were subject to Defendant's policies and practices requiring them to call in or

5    otherwise show up to work but were not being paid half of their "usual or scheduled day's work."

6    (Doc. No. 1 at 69.)

7         The FAC is devoid of any facts describing the circumstances, occurrences, and events

8    showing that Plaintiff and proposed class members were subject to any policy or practice

9    requiring them to call in or otherwise show up to work without pay. *See Cabrera v. S. Valley*

10   *Almond Co., LLC*, No. 21-cv-00748-AWI-JLT, 2021 WL 5967909, at *4 (E.D. Cal. Dec. 16,

11   2021) (finding a plaintiff's information and belief does not nudge a claim from mere possibility to

12   plausibility).

13        Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's reporting time

14   pay claim (Claim 3) with leave to amend.

15             4.    <u>Meal and Rest Breaks (Claims 4 and 5)</u>

16        California law requires an employer to provide its non-exempt employees meal and rest

17   periods as provided by the applicable Industrial Welfare Commission wage order. Cal. Lab. Code

18   §§ 226.7, 512; Cal. Code Regs., tit. 8 § 11070(11)(A)-(B). To satisfy an employer's obligation

19   pursuant to California law "an employer must relieve the employee of all duty for the designated

20   period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Super. Ct.*,

21   53 Cal. 4th 1004, 1034 (2012). During the break period, "employees must not only be relieved of

22   work duties but also be freed from employer control over how they spend their time." *Augustus v.*

23   *ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016). Like minimum and overtime wage claims, to

24   successfully state a meal or rest break claim, a plaintiff must allege facts specifically identifying

25   an instance where they were deprived of a meal or rest break. *See Landers*, 771 F.3d at 646;

26   *Guerrero v. Haliburton Energy*, No. 16-cv-01300-LJO-JLT, 2016 WL 6494296, at *6 (E.D. Cal.

27   Nov. 2, 2016) ("The requirement in *Landers* that a plaintiff must plead a specific instance of

28   alleged wage and hour violations also applies to claims about missed meal and rest periods.");

*Boyack v. Regis Corp.*, 812 F. App'x 428, 431 (9th Cir. 2020) (holding that a rest break claim fell short of the requirements established in *Landers* by not "demonstrating at least one workweek in which [plaintiffs] were personally deprived of rest breaks").

Here, the FAC alleges generally that Defendant violated Plaintiff's and the putative class members' required meal and break periods. Plaintiff alleges employees regularly worked shifts greater than five hours and greater than ten hours but were not provided meal periods during those shifts. (Doc. No. 1 at 57–59, 69–70.) Plaintiff alleges employees consistently worked consecutive four-hour shifts but were not provided rest breaks. (*Id*. at 57–58, 70.) Plaintiff alleges Defendant had policies of requiring employees to undergo a bag check after clocking out for lunch and not allowing employees to leave the worksite. (*Id*. at 56–57, 70.) Plaintiff also alleges employees had to answer phone calls from Defendant's supervisors while on break. (*Id*. at 56–57.) Plaintiff further alleges that as a result of daily work demands and pressures to work through breaks, employees were unable to take compliant meal and rest breaks and were not compensated for missed breaks. (*Id*. at 58, 70–71.)

Again, the court finds under either reading of *Landers* that Plaintiff fails to state a meal and/or rest break claim. While Plaintiff alleges daily work demands and pressure forced him to miss meal and rest breaks, he does not allege a single instance in which he was required to forgo meal and rest breaks without compensation. *See Benyamin v. TopGolf Payroll Servs., LLC*, No. 23-cv-00303-JAM-DB, 2023 WL 4054543, at *3 (E.D. Cal. Jun. 16, 2023) (dismissing meal and rest break claims because plaintiff did not point to one instance where he was denied a meal period or he worked more than the requisite hours without a break). Plaintiff also does not estimate how frequently his breaks were interrupted. Given the lack of factual allegations identifying a week in which Plaintiff suffered a break period violation or sufficient facts to create a plausible inference his breaks were interrupted, Plaintiff's meal and rest break claims suffer the same deficiencies as his minimum and overtime wage claims.

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's meal and rest break claims (Claims 4 and 5) with leave to amend.

/////

1          5.          Vacation Wages (Claim 6)

2          Under California law, "whenever a contract of employment or employer policy provides

3    for paid vacations, and an employee is terminated without having taken off his vested vacation

4    time, all vested vacation shall be paid to him as wages at his final rate in accordance with such

5    contract of employment or employer policy respecting eligibility or time served." Cal. Lab. Code

6    § 227.3. To state a claim for unpaid vacation wages, a plaintiff must allege that: (1) the employer

7    had a policy or contract to provide vacation, (2) the plaintiff had accrued vacation time pursuant

8    to this policy or contract and had unused vacation time, (3) the plaintiff was not properly

9    compensated for their unused vacation time upon termination, and (4) this failure to compensate

10   for unused vacation time was pursuant to the defendant's general policy. *Perez v. Performance

11   Food Grp., Inc.*, No. 17-cv-00357, 2017 WL 11046384, at *8 (C.D. Cal. May 9, 2017).

12         Plaintiff alleges Defendant paid shift differentials, nondiscretionary commissions,

13   incentive pay, and/or nondiscretionary bonuses to employees but failed to include those forms of

14   remuneration in the regular rate of pay upon which vacation wages were calculated and paid.

15   (Doc. No. 1 at 71.) In its motion to dismiss, Defendant argues Plaintiff fails to allege any

16   supporting facts and specify whether his vacation wages claim is predicated solely on the

17   purported failure to pay vacation wages at termination, or whether Plaintiff is alleging that such

18   wages were paid albeit at an incorrect rate. (Doc. No. 40 at 28.) Defendant also asserts Plaintiff's

19   claim fails because Section 227.3 does not require vacation wages be paid at the "regular rate of

20   pay" only that they be paid at an employee's "final rate." (*Id*.) In his opposition, Plaintiff

21   concedes Defendant was obligated to pay accrued vacation wages at the final rate of pay. (Doc.

22   No. 42 at 19.)

23         Plaintiff alleges no facts in the FAC that Defendant failed to pay vacation wages at the

24   final rate of pay and Plaintiff cannot cure this deficiency through arguments asserted in his

25   opposition. *See Gonzalez v. Apttus Corp.*, No. 21-cv-01844-JCS, 2022 WL 624443, at *4 (N.D.

26   Cal. Mar. 3, 2022) ("Presenting new factual assertions in an opposition brief is not a substitute for

27   allegations missing from a complaint.") (citing *Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir.

28   1988)). For that reason, the court finds Plaintiff failed to sufficiently state a claim for unpaid

1  vacation wages.

2       Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's vacation wages

3  claim (Claim 6) with leave to amend.

4       6.    Paid Sick Leave (Claim 7)

5       Under California law, employers are required to calculate accrued sick pay for

6  nonexempt employees at "the regular rate of pay for the workweek in which the employee uses

7  paid sick leave, whether or not the employee actually works overtime in that workweek" or "by

8  dividing the employee's total wages, not including overtime premium pay, by the employee's

9  total hours worked in the full pay periods of the prior 90 days of employment." Cal. Lab. Code

10 § 246(l)(1)–(2). In his FAC, Plaintiff alleges Defendant has failed to compute the amount due for

11 paid sick time in conformance with Section 246(l). (Doc. No. 1 at 72.) Specifically, Plaintiff

12 alleges Defendant paid sick leave to employees at a lower rate in violation of the law because

13 Defendant failed to include paid shift differentials, nondiscretionary commissions, incentive pay,

14 and/or nondiscretionary bonuses to employees in the regular rate of pay upon which sick pay was

15 calculated and paid. (*Id.*)

16      Plaintiff makes only conclusory allegations that he was entitled to sick leave and thus

17 Plaintiff fails to adequately plead his paid sick leave claim. Accordingly, the court will grant

18 Defendant's motion to dismiss Plaintiff's sick leave claim (Claim 7) with leave to amend.

19      7.    Failure to Furnish Accurate Itemized Wage Statements (Claim 8)

20      Section 226 itemizes nine categories of information that must be included in a wage

21 statement. If an employee suffers injury by an employer's knowing and intentional failure to

22 provide such information, he is entitled to recover damages as prescribed in the statute and

23 reasonable attorney's fees. *Id.*; *Tavares v. Cargill Inc.*, No. 18-cv-00792-DAD-SKO, 2019 WL

24 2918061, at *6 (E.D. Cal. Jul. 8, 2019). Plaintiff alleges employees' wage statements did not

25 include the total hours worked and failed to accurately set forth all applicable hourly rates in

26 effect during the pay period and the corresponding number of hours worked at each rate. (Doc.

27 No. 1 at 73.) Plaintiff alleges Defendant failed to keep accurate records of the correct overtime

28 wages based on the proper regular rate calculations that included shift differentials,

1   nondiscretionary commissions, incentive pay, nondiscretionary bonuses earned, and the total

2   amount of compensation due to their employees. (*Id.*) Further, Plaintiff alleges the wage

3   statements failed to accurately account for wages, overtime, and premium pay for deficient meal

4   and rest breaks. (*Id.*) Plaintiff alleges as a result, Defendant is liable for civil penalties pursuant to

5   California Labor Code section 226.3. (*Id.* at 74.)

6       The court finds Plaintiff's failure to furnish accurate wage statements claim is derivative

7   of his minimum wages, overtime, and meal and rest break claims. Because Plaintiff failed to

8   adequately plead those four underlying claims, the court will likewise dismiss his failure to

9   furnish accurate wage statements claim. *Bunkley v. Cole Haan, LLC*, No. 24-cv-00245-DAD-AC,

10  2025 WL 50688, at *8 (E.D. Cal. Jan. 8, 2025) (dismissing failure to furnish accurate itemized

11  wage statements claim because it was derivative of four underlying wage and hour claims).

12      Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's wage

13  statements claim (Claim 8) with leave to amend.

14      8.    Failure to Keep Required Payroll Records (Claim 9)

15      Section 1174(d) requires employers to "[k]eep, at a central location in the state or at the

16  plants or establishments at which employees are employed, payroll records showing the hours

17  worked daily by and the wages paid to . . . employees . . . in accordance with rules established for

18  this purpose by the commission . . ." To sufficiently state this claim, a plaintiff must plead facts

19  that provide "some reasonable basis" for concluding the employer violated this provision. *Kemp*

20  *v. Int'l Bus Machines Corp.*, 09-cv-03683-MHP, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8,

21  2010). In his FAC, Plaintiff alleges Defendant consistently failed to maintain accurate time and

22  wage records for him and employees as required pursuant to Section 1174(d) because Defendant

23  failed to pay proper wages, overtime, and premium pay. (Doc. No. 1 at 74.) Plaintiff alleges as a

24  result, Defendant is liable for civil penalties pursuant to Section 1174.5. (*Id.* at 75.)

25      Defendant argues Plaintiff fails to state a claim for failure to maintain required payroll

26  records for several reasons: (1) Section 1174(d) does not provide a private right of action; (2) his

27  claims are entirely derivative of his minimum, overtime, and meal and rest break claims; and (3)

28  his complaint lacks any factual allegations suggesting Defendant willfully failed to comply with

its obligation to maintain accurate and complete records. (Doc. No. 40 at 30.) In his opposition, Plaintiff does not respond to Defendant's arguments. Instead, Plaintiff states in conclusory fashion that "he has sufficiently pled claims for Defendant's failure to keep required payroll records." (Doc. No. 42 at 22.) Here the court interprets Plaintiff's failure to oppose Defendant's arguments as a concession of those arguments. *See No Casino in Plymouth v. Nat'l Indian Gaming Comm'n*, No. 18-cv-01398-TLN-CKD. 2022 WL 1489498, at *4 (E.D. Cal. May 11, 2022) (finding that a failure to address an argument in opposition briefing constitutes a concession of that argument). The court finds Plaintiff's claim for failure to keep required payroll records is wholly derivative of his minimum, overtime, and meal and rest break claims. Because the court finds Plaintiff failed to sufficiently plead those underlying claims, his failure to maintain required records claim fails. Moreover, the court agrees with Defendant's argument that there is no private right of action for violation of Section 1174(d). *See Dawson v. HITCO Carbon Composites, Inc.*, No. 16-cv-07337-PSG-FFM, 2017 WL 7806618, at *7 (C.D. Cal. Jan. 20, 2017) (noting that Section 1174(d) does not contemplate a private right of action). However, Plaintiff may still allege a violation of Section 1174(d) through PAGA. *See Davidson v. O'Reilly Auto Enters., LLC*, No. 17-cv-00603-RGK-AJW, 2017 WL 8288042, at *4 (C.D. Cal. Oct. 13, 2017) (finding an employee can recover civil penalties available under Section 1174 only through PAGA).

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's payroll records claim (Claim 9).

9.      Failure to Timely Pay Final Wages (Claim 10)

Sections 201 and 202 regulate the payment of final wages upon the discharge or resignation of an employee. Section 201 covers employees terminated by their employers and Section 202 covers employees who resign voluntarily. To enforce these provisions, Section 203 authorizes waiting time penalties for employers who "willfully" fail to comply with Sections 201 and 202. Cal. Lab. Code § 203(a). To state a claim for failure to timely pay wages upon termination, a plaintiff must allege when their employment ended and "exactly what wages were earned and unpaid." *Guerrero*, 2016 WL 6494296, at *8; *Dutra v. J.R. Simplot Co.*, No. 21-cv-

01054-TLN-CKD, 2023 WL 113846, at *6 (E.D. Cal. Jan. 5, 2023) (applying *Guerrero*).

Plaintiff alleges numerous employees are no longer employed by Defendant because they either quit or were fired. (Doc. No. 1 at 74–75.) Plaintiff alleges Defendant failed to pay employees all wages due and certain at the time of termination or within seventy-two hours of resignation and withheld wages for more than thirty days from the date of separation of employment. (*Id*. at 75.) Plaintiff states Defendant's failure to timely pay final wages was willful because Defendant "knew wages to be due but failed to pay them." (*Id*.)

The court finds Plaintiff has not sufficiently alleged Defendant willfully failed to timely pay final wages. Plaintiff does not allege even basic facts as to whether he quit or was fired, when the separation occurred, and what wages he was purportedly owed. Without such factual details, Plaintiff's allegations are simply too sparse to state a cognizable claim. Plaintiff also does not allege any facts suggesting Defendant willfully failed to timely pay his final wages as required under Section 203. *See Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2016 WL 1161508, at *5 (N.D. Cal. Mar. 23, 2016) (citing *Smith v. Level 3 Commc'ns Inc.*, No. 14-cv-05036-WHA, 2014 WL 7463803, at *3 (N.D. Cal. Dec. 30, 2014)). Lastly, Plaintiff's contention that his failure to timely pay final wages claim rests on his allegations of unpaid off-the-clock work and unpaid meal and rest periods is fatal to this claim, rendering it derivative of his other claims that are being dismissed in this order.

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's claim for failure to timely pay final wages (Claim 10) with leave to amend.

### 10.    Failure to Reimburse Necessary Business Expenses (Claim 11)

Pursuant to Section 2802(a), an employer must "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." "Merely alleging failure to reimburse unspecified work-related expenses is not enough to state a Section 2802 claim." *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016). Rather, to state a Section 2802 claim for reimbursement, an employer "must either know or have reason to know that the employee has incurred an expense. Once the employer has such knowledge, then it has

the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009); *see Chavez v. RSCR Cal., Inc.*, No. 18-cv-03137-JAM-AC, 2019 WL 1367812, at *3 (E.D. Cal. Mar. 26, 2019) (meritorious claims will "provide a single instance when such cost was actually incurred and not reimbursed").

Here, Plaintiff alleges Defendant failed to reimburse employees for expenses necessarily incurred in the performance of their job duties, including but not limited to vehicle maintenance costs, mileage, fuel, cellphone usage, protective gear such as boots, gloves, and other tools such as pens and knives. (Doc. No. 1 at 60–61, 75.) However, Plaintiff merely alleges the above expenses were incurred and has not identified a specific cost he bore that was not reimbursed or explain why that purported cost was necessary for his job. *Cf. Mayen v. Cal. Cent. Harvesting, Inc.*, No. 21-cv-00145-AWI-JLT, 2022 WL 3587602, at *8 (E.D. Cal. Aug. 19, 2022) (finding a plausible reimbursement claim was stated because the plaintiff alleged how much travel time was involved between farm blocks or ranches and how often such travel occurred in a typical six-day work week). Plaintiff's allegations are too vague and conclusory to comply with Rule 8 pleading requirements.

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's reimbursement claim (Claim 11) with leave to amend.

### 11.     UCL and PAGA (Claims 12 and 13)

The UCL prohibits "unlawful, unfair[,] or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. Each of these three adjectives captures "a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)). A business practice can violate one or each of the three prongs. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Plaintiff invokes the unlawful and unfair prongs of the UCL. (Doc. No. 1 at 76–77.) To

state a UCL claim based on the unlawful prong, Plaintiff must plead a violation of another statute or common law. *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (explaining that UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action"). Under the UCL's unfairness prong, courts consider either (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009).

Here, Plaintiff tethers his UCL claim to Defendant's alleged Labor Code and wage order violations. (Doc. No. 42 at 24–25.) Because the court finds Plaintiff's FAC fails to state a claim for violations of the California Labor Code and applicable wage orders, Plaintiff's UCL claim also fails. *See Benge v. Off. Depot, LLC*, No. 24-cv-00749-DJC-DB, 2024 WL 3794038, at *4 (E.D. Cal. Aug. 13, 2024) (finding "that Plaintiff did not plausibly allege a predicate violation, the UCL claim necessarily fails").

Plaintiff's PAGA claim is derivative of his other causes of action. (Doc. No. 1 at 75.) "[L]ike the UCL, a PAGA claim 'rises or falls' with its underlying causes of action." *Perez v. DNC Parks & Resorts at Sequoia*, No. 19-cv-00484-DAD-SAB, 2020 WL 4345328, at *11 (E.D. Cal. Jul. 29, 2020) (quoting *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011)).

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's UCL and PAGA claims (Claims 12 and 13) with leave to amend.

D.    **Defendant's Motion to Strike Plaintiff's Proposed Class Definitions**

In addition to its motion to dismiss, Defendant requests the court strike Plaintiff's proposed class definitions because they are improper fail-safe class definitions. (Doc. No. 40 at 34.) However, striking Plaintiff's proposed class definitions would be premature and procedurally improper under Federal Rule of Civil Procedure 12(f). First, as reflected in this order, Plaintiff

1   has not yet sufficiently stated any of his claims, which are brought on behalf of himself and the

2   putative class. Second, class allegations are generally not tested at the pleading stage and are

3   instead examined after a party has filed a motion for class certification. *See In re Wal-Mart*

4   *Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (quoting *Myers v.*

5   *MedQuist, Inc.*, No. 5-cv-04608, 2006 WL 3751210, *4 (D.N.J. Dec. 20, 2006) ("[D]ismissal of

6   class allegations at the pleading stage should be done rarely and [ ] the better course is to deny

7   such a motion because the shape and form of a class action evolves only through the process of

8   discovery."). Third, under Rule 12(f), which Defendant invokes, "[t]he court may strike from a

9   pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

10  Fed. R. Civ. P. 12(f).[5] Defendant has not articulated any of the bases under Rule 12(f) to strike

11  Plaintiff's class definitions. Accordingly, the court will deny Defendant's motion to strike

12  Plaintiff's proposed class definitions.

13                                    **CONCLUSION**

14          For the reasons explained above:

15      1.      Defendant's request for judicial notice is GRANTED in part as stated herein;

16      2.      Defendant's motion to dismiss Plaintiff's first amended complaint under Federal

17              Rule of Civil Procedure 12(b)(6) (Doc. No. 40) is GRANTED;

18      3.      Defendant's motion to strike under Federal Rule of Civil Procedure 12(f) (Doc.

19              40) is DENIED;

20      4.       Plaintiff's first amended complaint (Doc. No. 1) is DISMISSED with leave to

21              amend;

22      5.      Within fourteen (14) days from the date of entry of this order, Plaintiff shall file a

23              second amended complaint, or alternatively, a notice of his intent to not file a

24  _____

25  [5] "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that
    must arise from litigating spurious issues by dispensing with those issues prior to trial[.]"

26  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v.
    Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "[S]triking the pleadings is considered 'an

27  extreme measure,' and Rule 12(f) motions are, therefore generally 'viewed with disfavor and
    infrequently granted.'" *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 994 (S.D.

28  Cal. 2022) (citations omitted).

second amended complaint; and

6.    Plaintiff is cautioned that his failure to comply with this order may result in

dismissal of this action due to Plaintiff's failure to prosecute and comply with a

court order.

IT IS SO ORDERED.

Dated:    **April 29, 2025**

Dena Coggins
United States District Judge

27